**Opinion issued January 18, 2024**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-21-00288-CV

———————————

**KEVIN BURKE, JEFFREY SCHWARTZ BURKE, TRACY RUTH BURKE, LUCKY BURKE, CINDY BERNAT, PAM BURKE DAILY, BARBARA BURKE HARGERG, LORI ILENE QUINTA VALLE, FONDA GLAZER, AND KIM BROWN, Appellants**

**V.**

**HOUSTON PT BAC OFFICE LIMITED PARTNERSHIP (BANK OF AMERICA), Appellee**

———————————————————————

**On Appeal from the 129th District Court**
**Harris County, Texas**
**Trial Court Case No. 2016-75801A**

———————————————————————

## MEMORANDUM OPINION[1]

---

[1] Appellants, Kevin Burke, Jeffrey Schwartz Burke, Tracy Ruth Burke, Lucky Burke, Cindy Bernat, Pam Burke Daily, Barbara Burke Hargerg, Lori Ilene Quinta Valle, Fonda Glazer, and Kim Brown filed a motion for rehearing and a motion for

In this commercial lease dispute arising from a contractual appraisal process, appellants Kevin Burke, Jeffrey Schwartz Burke, Tracy Ruth Burke, Lucky Burke, Cindy Bernat, Pam Burke Daily, Barbara Burke Hargerg, Lori Ilene Quinta Valle, Fonda Glazer, and Kim Brown (collectively, the Landlords) appeal the trial court's interlocutory orders granting appellee Houston PT BAC Office Limited Partnership (Bank of America)'s (BAC) motion to enforce the appraisal award and motion for summary judgment on the Landlords' fraud-by-nondisclosure claim. The Landlords raise two issues on appeal. First, they contend that the trial court erred in enforcing the appraisal award because the neutral appraiser failed to disclose material information that a reasonable person could conclude might affect the neutral appraiser's impartiality. Second, the Landlords assert that the trial court erred in granting summary judgment on their fraud-by-nondisclosure claim because they presented sufficient evidence to raise a material issue of fact on each of the elements of their claim.

We affirm.

---

rehearing en banc of this Court's January 3, 2023 opinion and judgment. We deny the motion for rehearing, withdraw our January 3, 2023 opinion and judgment, and issue this opinion and judgment in their place. Our disposition remains the same. We deny appellants' motion for rehearing en banc as moot. *In re Wagner*, 560 S.W.3d 311, 312 (Tex. App.—Houston [1st Dist.] 2018, orig. proceeding [mand. denied]) ("Because we issue a new opinion in connection with the denial of rehearing, the motion for en banc reconsideration is rendered moot.").

**Background**

A.    **Factual History**

The Landlords own a tract of land composed of the eastern half of Block 84 in downtown Houston, which is bounded by Capitol, Louisiana, Smith, and Rusk Streets (the Tract).[2] The rest of the land at Block 84 is owned by BAC. Bank of America Center, which is owned by BAC, is located on Block 84.

The Landlords and BAC are parties to a Lease Agreement (the Lease) concerning the land occupied by the Bank of America Center. Article 3 of the Lease provides for a fixed rent for the first part of the lease term followed by six revaluation periods during which the parties are required to renegotiate the annual rent due in the latter part of the lease term. Pursuant to a 1982 amendment to the Lease, the period of fixed rent was extended to December 31, 2016, and the first revaluation period for the annual rent due was set to begin on January 1, 2017 and terminate on December 31, 2026.

Under the terms of the Lease, the revaluation process is based on the fair market value of the land as of the date one year prior to the commencement of the revaluation period. Thus, for the revaluation period beginning January 1, 2017, the

---

[2]    In 1972, the Landlords' predecessors-in-interest leased the tract to Block 84 Corporation. The Lease contemplated the construction of an office building which was completed in the early 1980s. That building is now known as the Bank of America Center. BAC is the successor-in-interest to Block 84 Corporation.

date for valuing the land was December 31, 2015. The rent owed was set at seven and one-half percent (7.5%) of the fair market value as of that date.

To determine fair market value, the Lease requires the parties to first try to reach an agreement on the fair market value of the land. If they are unable to agree, the Lease provides an appraisal process to determine fair market value. The process requires the parties to each appoint an appraiser to assess the land's fair market value. If the appraisers cannot agree on a value, they jointly select a "competent and impartial" third appraiser. The decision of two of the three appraisers establishes the fair market value of the land for calculating the annual rent due for the revaluation period. Under the terms of the Lease, the decision is final and binding: "The decision in which any two arbitrators or appraisers so appointed and acting hereunder concur shall in all cases be binding and conclusive upon the parties."

The parties were unable to agree on a fair market value, and the Landlords initiated the appraisal process in May 2016. The Landlords appointed their party-appraiser, Ronald P. Little (Little). BAC appointed Curtis Podlewski (Podlewski) as its party-appraiser.

Little appraised the fair market value of the land at $14,400,000.00. Podlewski appraised the fair market value at $8,250,000.00. Because the two party-appraisers did not agree to a fair market value, they selected Scott Rando, with Cushman & Wakefield, as the third appraiser. At Rando's request, the party-appraisers provided

4

him with information about the parties so he could perform a conflicts check. Rando issued his engagement letter to the parties on July 19, 2016. Following his appointment as the neutral appraiser, Rando issued his appraisal valuing the land at $8,700,000.00.

The appraisers met in person to discuss their differing values. Recognizing that the primary difference in their valuations concerned whether, under Section 3.02(c) of the Lease,[3] the land should be valued with or without access to the downtown tunnel system, the appraisers proposed to the parties that each appraiser prepare an appraisal "to attempt to reach a majority decision as to the market value of the property." The Landlords agreed to the proposal, but BAC did not. According to BAC, an extended effort to reach consensus among all three appraisers was unnecessary and beyond the scope of Section 16.01 of the Lease which provides that fair market value of the land is established by agreement of two of the three appraisers.

---

[3]    Section 3.02 of the Lease provided that the appraisal should value the land "as if free and clear of all improvements, encumbrances, and leases . . . ." While the parties agreed that the appraisers should not value the then-existing tunnel connection under the Bank of America Center based on the Lease's language, they disagreed about whether the appraisers should value the fact that adjacent land had tunnel connections and therefore the future potential of tunnel access to the land.

**B.    Procedural History**

On November 1, 2016, the Landlords filed their original petition seeking a declaratory judgment construing Section 3.02(c) of the Lease to determine whether the property was to be valued with or without consideration of the adjacent tunnel system. The appraisers met the next day. Podlewski and Rando agreed that a fair market value of the land was $8,475,000.00 and confirmed the valuation to the parties on November 3, 2016.

In December 2018, BAC filed counterclaims for breach of contract and declaratory judgment against the Landlords. BAC alleged that the Landlords had breached the Lease by contesting that the valuation agreed upon by Rando and Podlewski was binding. It also sought a declaratory judgment that the $8,475,000.00 valuation was binding on the parties.

In May 2019, the Landlords asserted additional claims for breach of the lease, common law fraud, and fraud-by-nondisclosure. They alleged, among other things, that BAC and Rando did not disclose that they had negotiated Rando's services as BAC's party-appraiser or their significant business relationships.

In August 2019, BAC filed a motion to enforce the arbitration and appraisal award and alternative motion for new arbitration and appraisal, seeking dismissal of the Landlords' claims and requesting that the trial court enforce the appraisal award. BAC moved for traditional and no-evidence summary judgment on the Landlords'

counterclaims for breach of contract, fraud, and fraud-by-non-disclosure, and it moved for traditional summary judgment on its request for declaratory relief, breach of contract counterclaim, and the Landlords' request for declaratory relief.

In late-August 2019, the Landlords responded to BAC's summary judgment motion on the Landlords' counterclaims, arguing that evidence existed to defeat BAC's no-evidence motion and that no summary judgment evidence existed to support BAC's traditional motion. The Landlords requested that BAC's summary judgment motion be denied or, in the alternative, continued until the Landlords could complete discovery.

In September 2019, the Landlords responded to BAC's motion to enforce the appraisal award arguing, among other things, that enforcement of a contested award must be done by either summary judgment or trial.

In September 2020, BAC filed a supplemental motion to enforce the appraisal award. In their response to the supplemental motion, the Landlords argued that additional evidence obtained in discovery showed undisclosed communications and business relationships between BAC, Rando, and Rando's firm, Cushman & Wakefield. The Landlords argued that the evidence raised fact questions about evident partiality and therefore precluded confirmation of the appraisal award.

BAC also filed a supplemental motion for traditional and no-evidence summary judgment to which it attached the deposition transcript of James Moran,

Cushman & Wakefield's corporate representative. Moran testified that, in his opinion, the Uniform Standards of Professional Appraisal Practice (USPAP) did not require Rando to disclose his communications with BAC. The Landlords responded to the supplemental motion objecting to Moran's opinion testimony.

The trial court entered two interlocutory orders (1) granting BAC's motion to enforce the arbitration and appraisal award and ordering that $8,475,000.00 was the fair market value of the land; and (2) granting BAC's motion for summary judgment on the Landlords' claims for breach of contract, fraud, and fraud-by-nondisclosure. The trial court severed the two orders, rendering them final and appealable, on May 18, 2021.

### Enforcement of Appraisal Award

In their first issue, the Landlords contend that the trial court erred in enforcing the appraisal award[4] because they offered evidence of "evident partiality"—the neutral's refusal to disclose critical information—which precludes confirmation of the award. BAC responds that the Landlords failed to make the required showing of evident partiality to be entitled to vacatur of the appraisal award.

---

[4] Article 16 of the Lease provides for identical arbitration and appraisal processes in one combined section. The Landlords and BAC have treated the appraisal award as subject to the same standards as an arbitration award under Texas law.

**A.  Standard of Review**

We review a trial court's decision to confirm or vacate an arbitration award under a de novo standard of review based on a review of the entire record. *Port Arthur Steam Energy LP v. Oxbow Calcining LLC*, 416 S.W.3d 708, 713 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). Texas law favors arbitration and thus review of arbitration awards is very narrow. *See Hoskins v. Hoskins*, 497 S.W.3d 490, 494 (Tex. 2016); *Southwinds Express Constr., LLC v. D.H. Griffin of Tex., Inc.*, 513 S.W.3d 66, 70 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Arbitration awards have the same effect as a judgment of last resort and, consistent with the deferential and narrow scope of review, we indulge every reasonable presumption in favor of the award and none against it. *See CVN Grp., Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002); *see also Stage Stores, Inc. v. Gunnerson*, 477 S.W.3d 848, 855 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (noting appellate courts review challenge to arbitration award under "heavy presumption" in favor of confirming award). A party seeking to vacate an arbitration award bears the burden of presenting a record that establishes its grounds for vacating the award. *Brown Lab Invs., LLC v. Moesser*, No. 01-16-00837-CV, 2018 WL 3733453, at *5 (Tex. App.—Houston [1st Dist.] Aug. 7, 2018, no pet.) (mem. op.).

**B.    Analysis**

The Landlords argue that they offered evidence that Rando failed to disclose facts potentially weighing on his partiality and, therefore, the trial court could not confirm the award under Texas law. BAC responds that the complained-of facts were trivial and immaterial and did not demonstrate impartiality and, therefore, there was no duty to disclose them.

A court shall vacate an award if the rights of the party were prejudiced by evident partiality of an arbitrator appointed as a neutral arbitrator. TEX. CIV. PRAC. & REM. CODE § 171.088(a)(2)(A). Neutral adjudicators are required to disclose any facts "which might, to an objective observer, create a reasonable impression of the arbitrator's partiality, but information that is trivial will not rise to this level and need not be disclosed." *Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W.3d 518, 525 (Tex. 2014); *Burlington N. R.R. Co. v. TUCO Inc.*, 960 S.W.2d 629, 636 (Tex. 1997); *Port Arthur*, 416 S.W.3d at 713–14 (citing *Mariner Fin. Grp. v. Bossley*, 79 S.W.3d 30, 32 (Tex. 2002)). "[E]vident partiality is established from the *nondisclosure itself*, regardless of whether the nondisclosed information necessarily establishes partiality or bias." *TUCO Inc.*, 960 S.W.2d at 636.

A party asserting evident partiality bears a "heavy burden" to establish specific facts that show an improper motive on the part of the arbitrator. *Sebastian v. Wilkerson*, No. 09-18-00223-CV, 2019 WL 470087, at *3 (Tex. App.—Beaumont

10

Feb. 7, 2019, no pet.) (mem. op.). Thus, the evidence must be "direct, definite, and capable of demonstration rather than remote, uncertain, and speculative." *Id*.

The Landlords argue that Rando failed to disclose facts potentially weighing on his partiality and, therefore, the trial court could not affirm the arbitration award under Texas law. They assert that Rando's nondisclosures fall into two categories: (1) his prior communications with BAC about serving as its party-appraiser and his agreement to do so; and (2) the various business relationships between BAC, its affiliates, its law firm, and Rando's firm Cushman & Wakefield.

### 1. Prior Communications

The Landlords contend that Rando's failure to disclose that BAC solicited him, and that he agreed to serve, as BAC's party-appraiser establishes evident partiality. In support of their contention, they point to the following evidence:

- Jarrett Minton III and Rando talked by phone on May 19, 2016, about Rando serving as BAC's party-appraiser, and Minton "probably" told Rando that the Lease required the Land to be valued as if unimproved and unencumbered.

- After the phone interview, Rando followed up with Minton that same day. Rando expressed his agreement to serve as BAC's party-appraiser and outlined the next steps:

  > Also, when you are ready to hire us, please include Jake (reply all to this email) in your email, along with the appropriate contact information for the other side's expert (Ron Little) so that Jake can meet the 10 day clock and get a meeting set with them. We will craft an engagement letter when I return.

11

- Minton chose Podlewksi to serve as BAC's party-appraiser because Rando had travel plans that conflicted with the timeline for the party-appraiser's work. But for that scheduling conflict, Rando "probably would have been [BAC's] original selection."

- When Minton informed Rando that BAC was selecting another party-appraiser, Minton identified the scheduling concerns as the reason Rando was not selected. Minton told Rando that if the process were to extend to a third appraiser, Rando would "be at the top of [BAC's] list" based "both upon [BAC's] internal discussions, as well as discussions with [BAC's] initial [party] appraiser."

The Landlords argue that, based on these facts showing that BAC courted Rando first as a party-appraiser and then as a neutral appraiser, a reasonable person could conclude that Rando might favor BAC in hopes of gaining additional business from BAC in the future. Thus, they reason, Rando had an obligation to disclose those facts to the Landlords because a reasonable person could conclude they might affect Rando's partiality.

The communications between BAC and Rando establish that BAC initially reached out to Rando about serving as BAC's party-appraiser, a discussion between Minton and Rando about Rando's qualifications and availability ensued,[5] and BAC did not ultimately select Rando as its party-appraiser due to scheduling conflicts. These communications are not the type of direct and definite evidence required to

---

[5]     Minton testified that he and Rando discussed Rando's position at his firm, his experience in appraisals, the number of annual assignments he had downtown, the timeline for the appraisal, and whether Rando had any constraints on his ability to meet the 10-day deadline for the initial meeting.

demonstrate an improper motive on the part of the arbitrator. *See Sebastian*, 2019 WL 470087, at *3. Rather, these communications regarding Rando's availability and qualifications to serve as an appraiser—which did not include any discussion of valuation of the Lease—are non-substantive and do not rise to the level of material fact requiring disclosure. *See Forest Oil Corp. v. El Rucio Land & Cattle Co., Inc.*, 518 S.W.3d 422, 431 (Tex. 2017) (concluding evidence supported trial court's determination that arbitrator who had been contacted to serve as mediator in case involving one of attorneys in arbitration, where engagement did not move forward and fact of contact was not disclosed to other party, "should not be disqualified for failure to disclose a trivial, non-prejudicial, not consummated invitation to act as mediator"); *Sebastian*, 2019 WL 470087, at *3–4 (concluding that party's attorney's and arbitrator's status as friends on Facebook, membership in same local bar association, and campaign contribution from arbitrator to party's attorney did not create bias or appearance of impropriety as to arbitrator); *see also IPCO-G.&C. Joint Venture v. A.B. Chance Co.*, 65 S.W.3d 252, 256–59 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (declining to vacate award even though evidence showed arbitrator had ex parte discussions with party during arbitration because that discussion "while improper, did not so affect [the other party's] rights as to deprive it of a fair hearing").

13

The Landlords also assert that they offered evidence showing a reasonable person could conclude Rando's partiality might be questioned. In support of this argument, they point to (1) Minton's deposition testimony acknowledging that he referred to party-appraisers as "dueling appraisers" in an email, (2) Little's testimony that he would not have agreed to use Rando as the neutral appraiser had he known BAC had asked Rando to serve as its party-appraiser and Rando had agreed, and (3) in the initial scheduling discussion, Rando referred to Little as "the other side's expert."

Minton's description of the party-appraisers in an email as "dueling appraisers," which he testified is "a colloquial term," and Rando's reference to Little as "the other side's expert," is simply not evidence from which a reasonable person could conclude Rando's partiality might be questioned. And Little's testimony that he would not have agreed to select Rando as the third appraiser had he known BAC had asked Rando to serve as its party-appraiser, and that Rando had agreed to do so, is similarly unavailing. The question is not whether the parties or their appointed appraisers state that they now have an impression of partiality but, instead, whether the undisclosed facts "might, to an *objective observer*, create a reasonable impression of the arbitrator's partiality." *Tenaska Energy*, 437 S.W.3d at 525 (emphasis added).

14

## 2.    Business Relationships

The Landlords next argue that Rando's failure to disclose the ongoing business relationships between his firm Cushman & Wakefield and BAC and its affiliates, also establishes evident partiality. In support of this argument, the Landlords rely on the following evidence:

- Cushman & Wakefield internally identified "M-M Properties"—and not the Landlords and BAC jointly—as the "Client" for Rando's neutral appraiser appointment in this case. M-M Properties is a joint venture partner in BAC.[6]

- Moran, Cushman & Wakefield's corporate representative, testified that from the fees Cushman received for Rando's engagement, Cushman paid a referral fee to David Chuoke, a real estate broker with Cushman, who had recommended that Minton consider Rando as BAC's appraiser.

The Landlords contend that these facts create a reasonable inference that Cushman and Rando were not neutral, but instead undertook the engagement on behalf of BAC's manager, M-M Properties. Rando's letter of engagement, however, identified Landlords' counsel (as lessor representative) and Minton (as BAC's representative) as the clients for Rando's engagement.

The Landlords also point to evidence that Rando's firm handled multiple appraisals between 2014 and 2019 for BAC-affiliated entities and BAC's law firm,

---

[6]    In the course of discovery, Cushman & Wakefield produced a "Job Log Report" for Rando's engagement to serve as the neutral appraiser that identified the "Client" as M-M Properties.

15

Jackson Walker, that generated almost $100,000 in fees. Specifically, Cushman & Wakefield performed:

- three appraisals for BAC's law firm between 2015 and 2017, generating $20,000 in fees;

- twelve appraisals for General Electric Asset Management, the owner of BAC's joint venture partner, between June 2014 and June 2016, generating $49,000 in fees; and

- three appraisals for the ultimate owner of General Electric Asset Management, State Street, between 2017 and 2019 generating, $31,000 in fees.

The Landlords argue that these transactions demonstrate an ongoing and meaningful client relationship between Cushman & Wakefield and these BAC-affiliated entities. According to the Landlords, a reasonable person could conclude this relationship might impact Rando's partiality because Jackson Walker and the entities would be more inclined to continue using Cushman & Wakefield's services if the appraisal award were favorable to BAC.

Arbitrators are not required to be disqualified merely because of a past business relationship with a party because often the most capable arbitrators will be those with extensive experience in the industry. *See TUCO Inc.*, 960 S.W.2d at 636 (citing *Commonwealth Coatings Corp. v. Continental Cas. Co.*, 393 U.S. 145, 150 (1968) (White, J., concurring)). Further, disclosure is required only if facts are material; an arbitrator need not disclose "trivial" matters. *See id.* at 637; *Sousa v.*

*Goldstein Faucett & Prebeg, LLP*, No. 14-20-00484-CV, 2022 WL 2976820, at \*7 (Tex. App.—Houston [14th Dist.] July 28, 2022, no pet.) (mem. op.).

The record reflects that all the contacts about which the Landlords complain involve individuals other than Rando and concern properties and matters unrelated to the land at issue in this dispute.[7] Rando had no involvement in these projects and did not receive any financial benefit from them, and the Landlords have offered no evidence showing that Rando even knew of the projects. *See Forest Oil*, 518 S.W.3d at 431 (noting one cannot be partial based on facts he does not know).

The Landlords argue that the fact that Rando was not involved in the other projects or did not directly receive a financial benefit from that work is not determinative. In support of their argument, they rely on *Amoco D.T. Co. v. Occidental Petroleum Corp.*, 343 S.W.3d 837 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). In that case, the parties entered into a purchase and sale agreement which provided for arbitration. *See id.* at 839–40. The plaintiffs made a demand for arbitration to resolve a contract dispute, and the case was submitted to arbitration. *See id.* at 840. The arbitration panel, in a two-to-one decision, decided in

---

[7] Moran testified that the Jobs Log Report produced by Cushman & Wakefield shows assignments involving properties located in Maryland, Washington, D.C., Charlotte, North Carolina, Orange County, California, or Atlanta and involved individuals in those local markets. He testified that "Rando would have had zero involvement with these assignments."

the defendants' favor. *See id*. The plaintiffs subsequently discovered undisclosed information pertaining to the arbitrator's relationship with defendants and moved to vacate the award based on the arbitrator's evident partiality. *See id*. The trial court determined the evidence established evident partiality and vacated the arbitration award. *See id*.

Affirming the trial court's judgment, the Fourteenth Court of Appeals held that the neutral arbitrator selected by defendants had an obligation to disclose that another attorney at his firm was representing a subsidiary of one of the parties to the arbitration. *See id.* at 847–48. The court of appeals rejected the defendants' argument that no obligation arose to disclose the information because the neutral arbitrator was not involved in the other matter and had no financial interest in the matter. *See id.* at 847–49. The court noted that the arbitrator had a business relationship with the firm and its attorneys and was paid a salary by the firm. *See id.* at 849.

The Landlords' reliance on *Amoco* is misplaced. The evidence in that case showed that the individual served as an arbitrator for the parties' dispute at the same time that his firm represented a party to the dispute in a separate case and was involved in the arbitrated dispute. *See id.* at 848. Further, the agreement between the parties affirmatively required the arbitrators to disclose any connections to the parties and any potential conflicts. *See id.* at 840. And it was undisputed that the arbitrator was aware of the concurrent representation. *Id.* at 847. Here, the Landlords

have offered no evidence of a tie to Rando or knowledge on his part of the relationships in question, nor is there a contractual requirement as in *Amoco*. The remote contacts about which the Landlords complain do not demonstrate evident partiality. *See Sebastian*, 2019 WL 470087, at *4 (concluding arbitrator was not required to disclose her prior relationship with homeowners concerning purchase from their business fifteen years before arbitration occurred because nondisclosure was based on remote relationship that had no effect on arbitrator's interest in outcome of arbitration); *Dotcom Ltd Co. v. DP Sols., Inc.*, No. 12-16-00340-CV, 2017 WL 3224887, at *4 (Tex. App.—Tyler July 31, 2017, no pet.) (mem. op.) ("A relationship between an arbitrator and a party 'must be ongoing and direct rather than speculative and remote' in order to support a claim of arbitrator partiality.").

There is no basis to conclude that an objective observer would have a reasonable impression of Rando's partiality based on these facts. The Landlords have not met their burden of presenting a record establishing grounds for vacating the award. *Brown Lab*, 2018 WL 3733453, at *5. We therefore overrule the Landlords' first issue.

### Summary Judgment

In their second issue, the Landlords contend that the trial court erred in granting summary judgment on their fraud-by-nondisclosure claim because they presented sufficient evidence to raise a material fact issue on each element of their

claim. BAC responds that the Landlords' claim fails because BAC had no duty to disclose the information at issue and the Landlords failed to establish a fact issue or produce any evidence regarding the reliance and intent elements of their claim.

## A.     Standard of Review

We review summary judgments de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When a party moves for both traditional and no-evidence summary judgment, we first review the trial court's ruling under the no-evidence standard of review. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If the trial court properly granted the no-evidence motion, we need not analyze the arguments raised in the traditional summary judgment motion. *Id.*

After an adequate time for discovery, a party may move for no-evidence summary judgment on the ground that no evidence exists of one or more essential elements of the claim on which the adverse party bears the burden of proof at trial. TEX. R. CIV. P. 166a(i); *see LMB, Ltd. v. Moreno*, 201 S.W.3d 686, 688 (Tex. 2006). The burden then shifts to the nonmovant to produce evidence raising a genuine issue of material fact on the elements specified in the motion. *See* TEX. R. CIV. P. 166a(i); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). A no-evidence summary judgment is improper if the nonmovant brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *Forbes Inc. v. Granada Bioscis., Inc.*, 124 S.W.3d 167, 172 (Tex. 2003). "Less than a scintilla of evidence

exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Id.* (quoting *King Ranch v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (internal quotation omitted)). More than a scintilla exists if it would allow reasonable and fair-minded people to differ in their conclusions. *Id.* Unless the nonmovant raises a genuine issue of material fact, the trial court must grant summary judgment. TEX. R. CIV. P. 166a(i).

When reviewing a traditional summary judgment motion, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating*, 164 S.W.3d at 661 (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)). To prevail on a traditional summary judgment motion, the movant must establish that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). When there are multiple grounds for summary judgment, and the order does not specify the grounds on which the summary judgment was granted, the appealing party must negate all grounds on appeal. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 381 (Tex. 1993).

**B.    Analysis**

Fraud by non-disclosure, a subcategory of fraud, occurs when a party has a duty to disclose certain information and fails to disclose it. *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219 (Tex. 2019); *Bradford*

*v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001) (explaining that there must be duty to disclose). To establish fraud by non-disclosure, the plaintiff must show: (1) the defendant deliberately failed to disclose material facts; (2) the defendant had a duty to disclose such facts to the plaintiff; (3) the plaintiff was ignorant of the facts and did not have an equal opportunity to discover them; (4) the defendant intended the plaintiff to act or refrain from acting based on the nondisclosure; and (5) the plaintiff relied on the non-disclosure, which resulted in injury. *See Bombardier*, 572 S.W.3d at 219–20.

A duty to disclose arises in four situations: (1) the parties have a confidential or fiduciary relationship; (2) one party voluntarily discloses information, which gives rise to the duty to disclose the whole truth; (3) one party makes a representation, which gives rise to the duty to disclose new information that the party is aware makes the earlier representation misleading or untrue; or (4) one party makes a partial disclosure and conveys a false impression, which gives rise to the duty to speak. *Brown & Brown of Tex., Inc. v. Omni Metals, Inc.*, 317 S.W.3d 361, 384 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). The existence of a duty to disclose is a question of law for the court to decide. *Bradford*, 48 S.W.3d at 755; *Rivers v. Charlie Thomas Ford, Ltd.*, 289 S.W.3d 353, 359 (Tex. App.—Houston [14th Dist.] 2009, no pet.). The Landlords contend that BAC had a duty to disclose under the second and fourth situations.

## 1. Duty to Disclose

For situation two, the Landlords point to evidence that BAC voluntarily disclosed its joint venture partners for conflicts purposes in an email to Rando and on which Little was copied. In response to Rando's email requesting that BAC provide him with "all the parties (landlord, tenant, their respective attorneys and so forth)" so that he could perform a conflicts check, BAC responded that "the successor entity to the Tenant under the ground lease is PT BAC Office Limited Partnership which is a joint venture between General Electric Pension Trust and M-M Properties, Inc." The Landlords argue that this voluntary disclosure created a duty to disclose all the details regarding actual or potential conflicts, including those affiliates' relationships with Cushman & Wakefield and its prior courtship of Rando.

When the alleged duty arises due to a prior disclosure, a duty to disclose exists only when the information that was disclosed creates a "substantially false impression." *Siddiqui v. Fancy Bites, LLC*, 504 S.W.3d 349, 371 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (partial disclosure); *Flood v. Katz*, 294 S.W.3d 756, 763 (Tex. App.—Dallas 2009, pet. denied) (voluntary disclosure).[8] A false impression arises when what was said is misleading because of other facts that

---

[8] "[A]lthough 'partial disclosure' and 'voluntary disclosure' are typically listed as separate theories of fraud by nondisclosure, there appears to be no functional distinction between the two theories." *White v. Zhou Pei*, 452 S.W.3d 527, 538 n.13 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citing O'CONNOR'S TEXAS CAUSES OF ACTION 295 (2012)).

were not disclosed. *See Siddiqui*, 504 S.W.3d at 371 (concluding false impression was created of company's ownership of a "valuable asset" before plaintiffs made investment in the venture); *White v. Zhou Pei*, 452 S.W.3d 527, 538–39 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (finding duty to disclose where defendant's partial disclosure created false impression of company's financial status before approaching sale of company assets); *Citizens Nat'l Bank v. Allen Rae Invs., Inc.*, 142 S.W.3d 459, 478 (Tex. App.—Fort Worth 2004, no pet.) (determining defendant's partial disclosure created false impression as to stability of investment project because defendant knew plaintiff was considering backing out of deal). Here, the information BAC disclosed in response to Rando's request for basic case information did not create a substantially false impression nor was it otherwise misleading with regard to whether some individuals at BAC might have had contacts with other individuals at Rando's firm unrelated to Rando. Rather, it merely provided the information Rando requested. *See Hoggett v. Brown*, 971 S.W.2d 472, 487 (Tex. App.—Houston [14th Dist.] 1997, writ denied) (concluding defendant director's assurances at board meetings that he had no interest in changing or taking plaintiff's ownership interest in company did not impose duty to disclose as yet unformulated merger plan where statements were simply responding to plaintiff's proposal to put company in bankruptcy).

For situation four, the Landlords assert that BAC made a partial disclosure that created a false impression to Little who then consented to Rando's appointment as a neutral appraiser. Specifically, they contend that BAC's email to Rando, copying both Little and Podlewski, appears designed to create the false impression that Rando and Minton had never previously discussed Rando's serving as BAC's party-appraiser when, in fact, they had spoken about it four weeks earlier. We find this argument unavailing. There must be evidence of an affirmative disclosure that creates a substantially false impression. Here, the email contained no words (such as "nice to meet you") to support the Landlords' contention that the exchange created the false impression that BAC and Rando had never spoken about the matter. Moreover, any assumption on the Landlords' part that Minton and Rando had never spoken about Rando's serving as appraiser, based on this email exchange, is not evidence of a partial disclosure that created a substantially false impression. *See Cantillo v. Cantillo*, 627 S.W.3d 367, 371–72 (Tex. App.—El Paso 2021, no pet.) (concluding wife did not have duty to disclose location of laptop and cell phone that were allegedly material to husband agreeing to mediated settlement agreement because she did not partially disclose whereabouts of devices nor did she affirmatively disclose any information to husband to create false impression she was in possession of devices; instead, husband made assumptions).

We conclude that the Landlords have failed to establish that BAC had a duty to disclose the detailed information about BAC's relationships and prior communications based on their allegations that BAC made a partial or voluntary disclosure that created a substantially false impression.

## 2. Reliance

The Landlords contend they offered evidence that they relied on BAC's omissions. In support of their contention, they point to the affidavit testimony of their representative, Barbara Harberg,[9] and Little that they would not have accepted Rando as the neutral appraiser had they known of the prior communications between BAC and Rando.

Justifiable reliance depends on one's own conduct: a "party claiming fraud has a duty to use reasonable diligence in protecting his own affairs . . . in an arm's-length transaction the defrauded party must exercise ordinary care for the protection of his own interests and is charged with knowledge of all facts which would have been discovered by a reasonably prudent person similarly situated." *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 497 (Tex. 2019) (quotation omitted). In measuring justifiability, we must inquire whether, "given a fraud plaintiff's individual characteristics, abilities, and appreciation of facts and circumstances at or before the time of the alleged fraud[,] it is extremely unlikely

---

[9] Harberg is one of the plaintiffs in the underlying suit and an appellant in this appeal.

26

that there is actual reliance on the plaintiff's part." *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010) (quotation omitted). Although reliance is often a fact question, it may "be negated as a matter of law when circumstances exist under which reliance cannot be justified." *Barrow-Shaver*, 590 S.W.3d at 497 (quotation omitted).

The Landlords have not presented any evidence showing that they used reasonable diligence to discover the complained-of information—for example, asking Rando or BAC whether they had had prior communications—before agreeing to him as the neutral appraiser. *See Bradford*, 48 S.W.3d at 756 ("The defendant may reasonably expect the plaintiff to make his own investigation, draw his own conclusions and protect himself[.]" (quotation omitted)). Further, we note that the complained-of information was readily available upon inquiry given that the Landlords learned of the prior communications through discovery they conducted after selecting the appraiser.

We conclude that the Landlords have failed to present more than a scintilla of probative evidence to raise a genuine issue of material fact as to the reliance element of their fraud-by-nondisclosure claim. *See* TEX. R. CIV. P. 166a(i).

### 3. Intent

The Landlords contend they presented evidence that BAC intended that the Landlords rely on its omissions. They assert that the evidence demonstrates that

27

BAC wanted Rando to serve as the neutral appraiser because it had a favorable impression of him from the time they interviewed him to serve as their party appraiser. In support of their assertion, they point to Minton's testimony that Rando "probably" would have been BAC's original selection had he not had conflicting scheduling issues, and that when Rando's schedule prevented him from being BAC's party appraiser, BAC put Rando on the "top of [its] list" to serve as a neutral appraiser.

A defendant's intent is determined at the time the defendant made the omission or representation. *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986). Some factors a court considers when determining intent are motive, past conduct, and related wrongful acts. *Feagins v. Tyler Lincoln–Mercury, Inc.*, 277 S.W.3d 450, 458 (Tex. App.—Texarkana 2009, no pet.). Though the determination of the intent element is generally an issue for the fact finder, a fraud claim is not impervious to summary judgment if the evidence of intent is so weak that it creates only a mere surmise or suspicion of its existence and thus amounts to no evidence. *See T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 222 (Tex. 1992); *Mays v. Pierce*, 203 S.W.3d 564, 573–74 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).

The Landlords argue that evidence that BAC found Rando favorable to its side is more than a scintilla of evidence that BAC withheld material information from the

28

Landlords to create the misimpression that Rando was neutral, and that BAC did so with the intent that the Landlords and Little rely on the misimpression not to object to Rando's serving as the neutral. We disagree. That BAC had a favorable impression of Rando is not evidence that it intentionally withheld additional information in the email in response to Rando's request for party information intending that the Landlords rely on the alleged omission. *See Mays*, 203 S.W.3d at 573 ("The determination of intent is uniquely an issue for the fact-finder because it depends on the weight and credibility to be assigned to testimony. However, evidence so weak that it creates only a mere surmise or suspicion of its existence . . . constitutes no evidence." (quotations and citations omitted)).

We conclude that the Landlords have failed to come forward with any evidence that (1) BAC had a duty to disclose the complained-of information or (2) supports the reliance and intent elements of their fraud-by-nondisclosure claim. We therefore hold that the trial court properly granted BAC's no-evidence motion for summary judgment on their claim. *See* TEX. R. CIV. P. 166(a)(i). Accordingly, we overrule the Landlords' second issue.

## Conclusion

We affirm the trial court's judgment.

Amparo Monique Guerra
Justice

29

Panel consists of Justices Kelly, Rivas-Molloy, and Guerra.