

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00542-CV

———————————————

AMY JENNIE BARHYDT, Appellant

V.

ALEXANDER MONDLOCK, Appellee

On Appeal from County Court at Law No. 2
Denton County, Texas
Trial Court No. CV-2024-03370-JP

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

## I. Introduction

It is a well-settled rule that pro se appellants are not entitled to any special treatment and are held to the same standards as licensed attorneys. *See In re J.A.*, No. 02-23-00129-CV, 2024 WL 3819373, at *2 (Tex. App.—Fort Worth Aug. 15, 2024, pet. denied) (mem. op.). In this case, the briefing, as well as the presentation of the case at trial, leaves us without any understanding of the nature of the pro se appellant's claims or how she supported those claims with evidence, much less evidence to support her desire for an award of $947,000. Additionally, the pro se appellant is attempting to represent a nonparty LLC without being a licensed attorney. Accordingly, we affirm the judgment as to the pro se appellant and dismiss any issues that the pro se appellant attempts to raise on the LLC's behalf.

## II. The Justice-Court and County-Court Proceedings

Appellant Amy Jennie Barhydt, appearing pro se, filed suit in the justice court against Appellee Alexander Mondlock seeking damages of $5,000. Her petition stated that her claim was based on the following:

> Loss of revenue/opportunity with fraudulant [sic] Business Platform listing with a fraudulant [sic] website misrepresenting my LLC and using the company's name, reputation, and frameworks/infrastructure. Allocations of fees associated with the research behind the Bing for Business issue and billing time spent attempting to rectify the situation with Alexander Mondlock. Return the intellectual property/domain.

2

The justice court rendered a take-nothing judgment in favor of Mondlock. Barhydt then appealed to the county court (the trial court).

The trial court held a bench trial. At the outset of the trial, the trial court attempted to ascertain the causes of action that Barhydt was pleading, and the following dialogue ensued:

> THE COURT: Now, as far as I read your pleadings, it appears that you have two causes of action, as far as I can tell. Fraud perhaps, some form of fraud, whether common law or statutory, I'm not sure, and perhaps a misappropriation of trade secret or trade -- some type of intellectual property.
>
> MS. BARHYDT: Correct, Your Honor. I have tangible proof and hard evidence to supply.
>
> THE COURT: That's not what I am asking you, ma'am. I'm asking you what your causes of action are. Are those them?
>
> MS. BARHYDT: Pursuing The People's Court as an LLC to motion the courts as I see a federal offense over state lines.
>
> THE COURT: Ma'am, this is not Judge Judy. This is a state trial court. Okay. This is a hard place to be if you're not a lawyer. Here you're going to have to tell me what your causes of action are. I'm telling you what I think they are from your pleadings. And they're pro se pleadings, so I'm not sure. I'm guessing. I think I've taken a good guess. And then you have to prove each and every element of those causes of action, which I'm sure you know.
>
> MS. BARHYDT: Absolutely, Your Honor.
>
> THE COURT: So are your causes of action common law fraud, statutory fraud, misappropriation of trademark? What are your causes of action under Texas law, ma'am?
>
> MS. BARHYDT: Under Texas law, trademark infringement, fraudulent LLC, breach of contract.

THE COURT: What is a fraudulent LLC?

MS. BARHYDT: My EIN was stolen over state lines when he fraudulently created a[n] FLLC in New York without my permission and I am the registered agent and it's my EIN that was stolen.

The trial court asked Barhydt whether she was appearing on behalf of an LLC, and she answered affirmatively. When asked whether she was a lawyer, Barhydt answered that she is the registered agent for her LLC. The trial court then informed Barhydt that "an LLC is[] someone else" and that she could not "carry on any causes o[f] action on behalf of someone else in this court." The trial then proceeded.

Barhydt offered and the trial court admitted into evidence "the federal folder," containing various unauthenticated documents, which was never referenced again during the trial. She then called her business partner (Dekorah Jennie Barhydt) to testify, and the following questioning took place:

Q. My question for the witness is, did the original registered agent file this certificate of formation for the State of Texas in April 2017? Alexander Mondlock, did he file the certificate of formation in April of 2017?

A. Yes.

Q. Did he resign as the registered agent and formally submit the documentation to the State of Texas, and I became the registered agent of 51 percent in October of 2017?

A. Yes.

Q. Did the former registered agent in 2018 get a trademark approved fraudulently in the state of New York in 2018?

A. Yes.

4

Q. Did Alexander Mondlock resign with a notarized documentation from the organization and its entire entity January 2019?

A. Yes.

Q. Was Alexander Mondlock contacted numerous times about the intellectual property, including but not limited to the domain, the trademark, and bank accounts?

A. Yes.

MS. BARHYDT: No further questions, Your Honor.

During cross-examination, defense counsel asked what the alleged trademark was for, and the business partner said "[f]or a foreign liability." Upon further questioning about what the trademark said, the business partner said only, "Simplicity Brands." Defense counsel asked again, "I would like to know what trademark in New York was registered by Alexander Mondlock," and she replied, "It was under Simplicity Brands' EIN number for a foreign liability entity."

During redirect, Barhydt attempted to ask her business partner the following incomprehensible question:

My question is, does my standard operating agreement filed with the governor of Texas hold validity to the breach of contract for Alexander Mondlock crossing state lines and fraudulently creating an SOA with an individual who I did not approve as an MBR named Daphne Barnard who signed a leasing agreement in Manhattan, New York, for multimillion dollars of rent that's tied to my EIN federally with 947,000 tied to a Dunn & Bradstreet business credit report of money I did not see in my business bank, but it's tied to my EIN? My question for you is . . . will the standard operating agreement of the State of Texas --

The trial court interrupted Barhydt at this point to alert her that "[t]ypically questions are one[-]sentence long" and that nobody knows what was asked when compound questions are used. Barhydt reformulated her question but never again mentioned the $947,000.

After hearing additional testimony from the business partner and asking three questions of another witness named David Barhydt,[1] the trial court concluded that "no causes of action have been proved here today" and signed a take-nothing judgment in favor of Mondlock.

Barhydt then appealed to this court. Mondlock did not file a brief with this court.

---

[1]The testimony in its entirety was as follows:

Q. Thank you, David, for speaking today.

Did you participate in the open house for Simplicity Brands in 2017 July?

A. Yes, I did.

Q. Were you affiliated with Simplicity Brands and its extracurricular activities partnering with a[n] academic student body known as Enactus?

A. Yes, I did.

Q. Did you actively participate in the organization as a contractor?

A. Yes, I did.

MS. BARHYDT: No further questions, Your Honor.

## III. This Appeal

On appeal, Barhydt's brief sets forth three issues, though each issue contains two questions, which we set forth verbatim:

**ISSUE 1:** Did the trial court have the appropriate setting for the $947,000 Dun & Bradstreet Revenue Claim, Breach of Contract (Standard Operating Procedures "Company Agreement"), and/or the ability to provide monetary indemnification for the damages the stolen intellectual property Fraudulently used by the former MBR, Mr. Alexander Mondlock. Did the Judge have a fair moment to properly review all the evidence provided in hard copies of 13 Exhibits during the Trial?

**ISSUE 2:** Did the Trial Courts have the chance to hear the chronological timeline of events? Did the Trial Courts notice the Notarized Resignation letter from the former MBR in January 2019 and the Fraud committed over State lines (NY) through EIN Theft/Business Identity Theft?

**ISSUE 3:** Did the trial court recognize that the Trademark Fraudulent publication isn't tied to an issuing attorney licensed in the State of NY? Did the trial courts have the proper chance to hear about the nature of Simplicity Brands LLC being 100% virtual in the United States service-based outsourcing of talent acquisition/human resource projects, and the Trademark for Foreign Supply Chain and Logistics? [Record references omitted.]

Despite the six questions raised, Barhydt's argument is a single paragraph:

The trial judge was unable to provide the monetary indemnification of $947,000[2] towards the claim. The appellant, Registered

---

[2]In the "Summary of the Argument" portion of her brief, Barhydt opines that the trial court signed a take-nothing judgment "due to monetary damage exceeding the Juris Diction [sic] available in the Denton County Trail [sic] Courts." The trial court stated at the conclusion of the trial that the case presented a "jurisdictional issue of [$]947,000, which is not only beyond the Justice of the Peace Court's jurisdiction but beyond this court's jurisdiction." *See* Tex. Gov't Code Ann. § 25.0633(e) (providing that Denton County Court at Law No. 2 has jurisdiction over all civil causes and proceedings, original and appellate, prescribed by law for county courts);

Agent/CEO/Business Owner (51%) Ms. Amy Jennie Barhydt, has supported her claims against the defendant, former MBR (49%) Mr. Alexander Mondlock through fact findings, hard supporting evidence, and member testimonies. The appellant called to the stand her current MBR (49%), Mrs. Dekorah "Jennie" Barhydt to have the courts hear her testimony for how this has affected our livelihood, business ownership, consumer volume, and the company's reputation. Appellant, Amy Jennie Barhydt called a second contractor testimony, David Scott Barhydt, to showcase the impact it's caused. For this reason, the case should be reversed and open for a new trial. [Record citations omitted.]

Regarding the standards that apply to pro se litigants, we reiterate

that a pro se litigant is held to the same standards as licensed attorneys and must comply with applicable laws and rules of procedure. *Clemens v. Allen*, 47 S.W.3d 26, 28 (Tex. App.—Amarillo 2000, no pet.) (citing *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978)). On appeal, as at trial, the pro se appellant must properly present [her] case. *Id.*; *Plummer v. Reeves*, 93 S.W.3d 930, 931 (Tex. App.—Amarillo 2003, pet. denied); *Karen Corp. v. Burlington* N[.], 107 S.W.3d 118, 125 (Tex. App.—Fort Worth 2003, pet. denied).

*Strange v. Cont'l Cas. Co.*, 126 S.W.3d 676, 677–78 (Tex. App.—Dallas 2004, pet. denied).

As a preliminary matter, we address the standing and representation issues that are apparent on the face of the record. Although Barhydt listed herself as plaintiff below and as Appellant here, she appears to be pursuing claims on behalf of her LLC. For one, this poses a standing issue because a member of a limited liability company

---

*id.* § 25.0003(c)(1) (providing that a statutory county court exercising civil jurisdiction concurrent with the constitutional jurisdiction of the county court has concurrent jurisdiction with the district court in civil cases in which the matter in controversy exceeds $500 but does not exceed $250,000, excluding interest, statutory or punitive damages and penalties, and attorney's fees and costs, as alleged on the face of the petition).

lacks standing to assert claims individually when the cause of action belongs to the company. *See Siddiqui v. Fancy Bites, LLC*, 504 S.W.3d 349, 360 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). Additionally, the LLC was not named as a party in the suit below and is therefore not a party to this appeal. *See generally Goodwin v. Goodwin*, No. 01-21-00286-CV, 2023 WL 2025719, at *6 (Tex. App.—Houston [1st Dist.] Feb. 16, 2023, no pet.) (mem. op.) ("If we were to rule on the merits of an issue affecting a person who is not a party to this appeal, we would be issuing an advisory opinion, which we have no authority to do."); *see also Valley Baptist Med. Ctr. v. Gonzalez*, 33 S.W.3d 821, 822 (Tex. 2000) ("[C]ourts have no jurisdiction to issue advisory opinions."). Moreover, even if the LLC had been named as a party, Barhydt could not represent the LLC in this appeal because she is not an attorney. *See Lorie Bernice Sharpe Tr. v. Phung*, 622 S.W.3d 929, 929–30 (Tex. App.—Austin 2021, no pet.) ("According to Texas law, only a licensed attorney is allowed to represent other parties."); *see also 1 Fox 2 Prods., LLC v. Mercedes-Benz USA, LLC*, No. 03-20-00101-CV, 2021 WL 81865, at *3 (Tex. App.—Austin Jan. 7, 2021, no pet.) (mem. op.) (dismissing corporate appellant's issues raised in brief because LLC's owner could not represent entity pro se). For all of these reasons, we dismiss any LLC issues that Barhydt attempted to raise in her brief. *See 1 Fox 2 Prods.*, 2021 WL 81865, at *3.

As to any claims that Barhydt is pursuing on her own behalf,[3] we agree with the trial court that "no causes of action have been proved." We understand the trial court's frustration regarding Barhydt's trial presentation as the limited trial testimony failed to establish who the players were, the causes of action that were being presented, and how the testimony from the two witnesses related to the causes of action—thus leaving the trial court (as well as this court) without any guidance to resolve the case.[4] Moreover, the only testimony regarding damages was a question that both this court and the trial court determined to be incomprehensible. This alone—the absence of any evidence of damages—warrants the trial court's take-nothing judgment. Accordingly, we overrule all of Barhydt's issues.

## IV. Conclusion

Having overruled Barhydt's issues, we affirm the trial court's judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered: August 14, 2025

---

[3]For purposes of this analysis, we assume without deciding that Barhydt's argument was not forfeited due to inadequate briefing. And we interpret the crux of her argument to be that the take-nothing judgment should be overturned because she proved up a claim for damages of $947,000.

[4]Barhydt's brief references attachments, but we are at a loss as to how they relate to her claims.

10